UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAURIE CLOUTIER,

        Plaintiff,

v.                                                  Case No. 14-C-1422

CAROLYN COLVIN,

        Defendant.

**DECISION AND ORDER**

Laurie Cloutier filed an application for Social Security Disability benefits. Following a hearing, an administrative law judge (ALJ) denied benefits, finding the Plaintiff not disabled and capable of light work. Following administrative appeals, the Plaintiff filed this action seeking review of the Commissioner's decision. For the reasons given below, the decision of the Commissioner will be remanded for further proceedings.

**I. Background and Analysis[1]**

In reviewing an ALJ's decision, a court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989). The findings of the Commissioner as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir.2000). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence

---

[1] Because the Plaintiff raises a single issue of law, an extensive history of Plaintiff's medical issues is unnecessary.

substantially supports the ALJ's findings and is otherwise free from error. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir.1996). Finally, the Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless "the record 'compels' a contrary result ." *Borovsky v. Holder,* 612 F.3d 917, 921 (7th Cir. 2010).

The ALJ found the Plaintiff to have severe impairments of osteoarthrosis, degenerative disc disease, knee pain, and mental impairments including depression, anxiety, mood disorder, and bipolar disorder. At Step 3, the ALJ found the Plaintiff had moderate impairments in social functioning, as well as concentration, persistence or pace, which courts often refer to as CPP. (R. 30.) As for social functioning, the ALJ noted that Plaintiff did not like to socialize with others, had been fired due to an inability to get along with others, and had a restraining order preventing her from contact with her neighbor. (R. 30.) The moderate limitations in CPP were likely based on Plaintiff's extensive mental health history, including panic attacks, depression, and anxiety. (R. 32-33.) For example, the state agency reviewers had found that the Plaintiff could perform unskilled work and manage two or three-step instructions, but could not work with the public or with large numbers of co-workers. (R. 35.) Dr. Joan Kojis, Ph.D., a state agency reviewer, checked boxes indicating moderate difficulty in several areas, including the ability to perform activities within a regular schedule, maintain regular attendance, and to be punctual. (R. 1234.) The ALJ gave the

state agency reviewers' conclusions "great weight" because of their experience in reviewing medical records. (R. 35.)

The ALJ found the Plaintiff had an RFC to perform light work, with the following limitations:

> she is limited to simple, unskilled work not performed at a production pace, such as on an assembly line. There should be minimal change in her assigned task, no contact with the public, no co-workers in close proximity and contact with supervisors should be limited to the beginning and end of the shift and perhaps one to three times in between. The work should be assigned [to] be performed primarily in isolation and there should be no overhead lifting.

(R. 31.) The ALJ asked the vocational expert a hypothetical question incorporating essentially the same RFC limitations set forth above.

The Plaintiff argues the ALJ committed error because the RFC, and the question to the vocational expert, did not include the limitations in CPP that the ALJ had found in Step 3, which were based on the boxes checked by the state agency reviewers. The limitations the ALJ imposed did clearly address pace by ruling out any work performed "at a production pace." (*Id.*) But the ALJ did not impose limitations related to concentration or persistence.

It could be argued that the ALJ need not parrot his Step 3 findings in the RFC in every instance. Often the reviewing physicians or psychologists check a number of boxes and then provide a more nuanced mental RFC in narrative format. Here, for example, both reviewers found, in their narrative explanations, that the Plaintiff could perform unskilled work. In *Johansen v. Barnhart,* 314 F.3d 283, 289 (7th Cir. 2002), the Seventh Circuit sanctioned such an approach, effectively finding that the reviewers' narrative opinion trumped the checked boxes. "Dr. Matkom . . . went further [than the checked boxes] and translated those findings into a specific RFC

3

assessment, concluding that Johansen could still perform low-stress, repetitive work." If the mental health professionals found, in their RFCs, that the claimant had the ability to a given type of work, then the ALJ could adopt that in his own RFC and the question posed to the vocational expert. In such a circumstance, the ALJ need not tick off every checked box in his RFC or in his question to the vocational expert.

But *Johansen* was decided in 2002, and since then the Seventh Circuit has appeared to back off such an approach. In *Yurt v. Colvin,* for example, the state agency reviewer found six areas of moderate limitation impacting CPP, but then, in a narrative summary, indicated that the Plaintiff could work. "Dr. Lovko then opined that although Yurt's diagnosis was 'serious and consistent with severe impairments,' his functioning did not suggest that he had lost the capacity for unskilled work." *Yurt v. Colvin,* 758 F.3d 850, 854 (7th Cir. 2014). On appeal, the government argued that Dr. Lovko's narrative opinion "translated" the limitations he'd found into an RFC, which the ALJ was entitled to adopt (as in *Johansen*). But the court found that Dr. Lovko's opinion that the Plaintiff could perform unskilled work did not mean the ALJ could ignore the boxes that Dr. Lovko had checked, which spoke to CPP limitations. "[T]he Commissioner seems to be suggesting that the hypothetical and the mental RFC adequately accounted for Yurt's limitations in concentration, persistence, and pace by limiting Yurt to unskilled work. But we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id.* at 858-59. The court went on: "The ALJ specifically found at Step 4 [Step 3] that Yurt had 'moderate difficulties ... [w]ith regard to concentration, persistence, or pace.' These limitations were highlighted again in Dr. Lovko's findings on the

4

MRFCA form. Beyond stating that Yurt could perform "unskilled task[s] without special considerations," the hypothetical does nothing to ensure that the VE eliminated from her responses those positions that would prove too difficult for someone with Yurt's depression and psychotic disorder." *Id.* at 859.

The same result must follow here. Although the state agency reviewers found the ability to perform unskilled work, that is an abstract conclusion divorced from the rigors of a standard work week and all of its demands. That is, one's level of "skill"– whether high, low, or medium— does not speak to CPP concerns, such as whether one has the *will* to perform that work or the ability to concentrate long enough to meet an employer's demands. What the Seventh Circuit seems to be saying is that if reviewers check boxes, and if the ALJ finds those limitations at Step 3, those limitations need to be incorporated into the RFC and hypothetical question because a mental RFC relating to "skill" does not itself address those limitations. "Although the ALJ's hypothetical contained several limitations accounting for Yurt's difficulties in social functioning, the blanket statement that he could perform 'unskilled' work fails to accurately capture Yurt's documented difficulties with concentration, persistence, and pace." *Id.*

This trend was echoed more recently in *Varga v. Colvin,* which relied heavily on *Yurt*. There, the reviewing psychologist found seven areas of moderate limitation, but the ALJ did not include them all in the RFC. "Worksheet observations," the court concluded, "while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin,* 794 F.3d 809 (7th Cir. 2015). The *Varga* court, drawing on *Yurt,* thus reaffirmed that when a reviewer checks a box indicating moderate CPP limitations, the ALJ must incorporate that into the RFC and the question to the vocational expert. Here, because

5

the RFC does not address concentration or persistence, the ALJ did not do that.

The government also suggests the use of "or" means that the ALJ need not address concentration, persistence *and* pace. But that argument is also a lost cause, having been rejected by the *Varga* court: "The word 'or' has an inclusive sense (A or B, or both) as well as an exclusive one (A or B, not both). . . a person deemed to have problems in 'concentration, persistence, or pace' may have problems with one, two, or all three of those categories." *Id.*

In sum, *Varga* and *Yurt* stand for the principle that when an ALJ credits medical reviewers, the limitations they find in checked boxes must be incorporated into the RFC unless, in the rare case, the "narrative RFC adequately encapsulates and translates those worksheet observations." *Id.* That did not occur here, because the narrative RFC merely indicated an ability to perform a given skill of work without respect to concentration or pace. For these reasons, the decision of the Commissioner is remanded, under sentence four of § 205(g), for further proceedings.

**SO ORDERED** this 21st day of September, 2015.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court